Mr. Babb was convicted after a jury trial in the Northern District of Iowa for counts that were raised on appeal by trial counsel. One addresses whether or not Mr. Babb's counsel should have been able to inquire into a prior felony conviction. I can't hear you, counsel. I'm sorry, Your Honor. Is that better? Yes. Okay. I think the main problem is you're going to just need to speak up. Okay. The first issue deals with a claim that Mr. Babb should have been able to cross-examine more thoroughly the confidential informant in the case, a gentleman by the name of Mr. Clark, regarding a 2004 felony conviction involving theft. Did the district court rely on Rule 609B to exclude that? Yes, Your Honor. So if so, how is that wrong? Well, maybe I was too quick to agree with you. I think it's a little bit unclear as to whether it was the B or the A part as far as whether it was a felony. I think we probably have cases that say as long as it could be a particular rule, then there's no abuse of discretion or whatever the standard is. Go ahead. Sure. I'm just not clear which one it was actually referred to. Right. And I think the trial court, because the issue had kind of morphed from the original intent of counsel in trying to get into some prior convictions by the time that they had the conference outside of the jury, and it was brought to the court's attention in 2004. This hadn't been the subject of a motion in limine at all, had it? No. So it just jumped up during the trial. Yes, and I believe the record reflected that the identity of this confidential informant and the prior record of the confidential informant have been provided to trial counsel perhaps four or five days prior to trial. There was a certain amount, a considerable amount perhaps, of impeachment done in any event with respect to other prior bad acts. Isn't that true? That's correct. And that began with the prosecution bringing out a 1999 felony possession charge out of Arizona during direct examination. Is there a notice requirement? There is a notice requirement under the rule for anything outside of 10 years on the felony convictions. Yes. Counsel, your brief says the trial court denied confrontation rights by excluding under Rule 609B evidence of prior convictions. Are you now saying the court did not invoke 609B? No. No, Your Honor. I do believe that the court felt that under 609A and B that the 10-year rule applied and the court did find that allowing counsel to go into that prior conviction would be more prejudicial than probative. Okay. So where in the language of 609B did the trial court abuse its discretion? Well, I think that the determination that the argument has to be that if the court made a determination that the prior conviction was more prejudicial than probative, then that's where the abuse of discretion occurred, Your Honor. Wait a minute. I don't even understand that response. We're talking about the excluded 2000, 2002, and 2004 crimes that were not crimes of dishonesty, right? Well, Your Honor, in all honesty, I believe that the 2000 and 2002 crimes were conceded by trial counsel as not admissible, and he then began to focus on the 2004 felony theft conviction. And from that... Where was the abuse of discretion? Was it not more than 10 years? Was it a crime of dishonesty? Where's the flaw here? Well, I think the flaw is that because it was a felony conviction and it was relatively close in time, that counsel believed that he should have been able to get that information in front of the jury despite it being outside of the 10-year. But that's a discretion. Was it more than 10 years elapsed from the serving of whatever sentence there was? Yes. All right, so it falls within 609B. Correct. Was it a crime of dishonesty? Well, I don't know that that was ever resolved on the record, Your Honor. You don't argue that it was? Excuse me? You don't argue that the abuse of discretion was to not realize it was not considered a crime of dishonesty, which is relevant under 608? That's correct. That was not argued. Okay, so the abuse is simply you disagree with where the court came out. Yes, Your Honor. Thank you. Sure. And it's Mr. Babb's position that had that information come in, a reasonable jury may have or might have received a significant different impression of Mr. Clark's overall testimony, given the fact that he had more than one felony conviction in light of his desire to cooperate with the government, which shows motive and bias in this case. The second issue is whether or not Mr. Babb was entitled to a buyer-seller instruction in this case. I think the argument that counsel made on the record was that although there were three transactions that occurred between Mr. Clark, Mr. Taylor, and Mr. Babb, the April 24th and July 9th transactions were smaller quantities of methamphetamine. They were all more than usual amounts, though, were they not? Well, I think the testimony from Officer Gill at the time of trial was that individuals can use up to a quarter gram to a gram a day of methamphetamine, in his experience. And I think if you look at the duration between at least the April 24th and July 9th sales, does that attenuate the quantity? Does that mean that the sale was for a user that was using a gram a day type of quantity? I think that's hard to say from the record in this case. Admittedly, the case law in this circuit limits the buyer-seller instructions to an individual use quantity, and at least under, I believe, Hester that cited in the government's brief and others, Conway perhaps, a single individual sale. And I think that the trial counsel felt that given the evidence that Mr. Babb had exchanged manual labor for using methamphetamine, that perhaps he was entitled to the buyer-seller instruction in regard to the smaller quantity transactions in this case. I'm into my rebuttal time, so if there's no further questions. Thank you. Ms. Williams. May it please the Court. Opposing counsel. Your Honors, Lisa Williams here representing the United States in the Northern District of Iowa. I'd like to first address the 609 argument very briefly. Not only is this, we are asking the Court to review this for abuse of discretion, but also harmless error, because even if the Court somehow did abuse its discretion and should have let in evidence of that 2004 conviction, doing that would have been harmless given that there's no proof that the defendant's substantial rights were affected and that there was anything more than a slight influence on the verdict. This is a case that involved three separate controlled buys with photographic document evidence that the defendant was the one delivering the drugs during those controlled buys. You have his customers and his source testifying about his involvement in this conspiracy. And of all the witnesses, I was not trial counsel, but reading the briefs, the flavor that I get is that of all the witnesses, Mr. Clark is one of the least important witnesses at trial. And so the inability to impeach him on a second conviction doesn't pass the harmless error test, because it's just not that significant of an issue. Now, turning to the abuse of discretion standard, trial counsel, defense counsel, was allowed to impeach Mr. Clark on a number of things. His drug use, the fact that he violated the terms of his cooperation agreement by using drugs while working with the police, that he's a drug dealer, that he's a felon, that he was a drug user during the time, and that he was cooperating to avoid charges. What struck me is that counsel really wanted to make an argument that because he's a felon, he was facing enhanced penalties for being a felon in possession of a firearm, and facing 851 exposure if he were to be charged federally for possessing those drugs. That argument is available for him to make, even without talking about these other convictions, because the fact of his 1909 felony drug conviction was admitted into trial. And so there was no, counsel was free to make those arguments with the evidence that he had. He didn't need to get into this 2004 theft. I think the record, no one really addressed whether it's a crime of dishonesty. I think the record is not clear on that. I know the government did not cite to this case in its brief, but I believe it's the Yee case, Y-E-O, that says that the offering party bears the burden in a theft charge to establish whether or not it's a crime of dishonesty involving fraud or deceit or more of a simple theft. And I don't think, because the record isn't clear, that was never established. And so there's no way that we get to 609A territory. We are strictly in 609B, and the time limit here, it was outside the 10-year period. And I do not think that this court can find that that was an abuse of the court's discretion in excluding that information. With respect to the buyer-seller argument, the problem here, and I think that the problem that the trial court recognized, is that this case is not about these three control buys. There is significant more evidence of Mr. Babb's involvement in this conspiracy than delivering drugs to Mr. Clark and Mr. Taylor on three separate occasions. You have his supplier, Miss Simon, I believe her name is, talking about that she was regularly bringing one pound of methamphetamine back from Arizona, and that the defendant always obtained one ounce at least from those trips. She estimated that he received a third of the total methamphetamine that she purchased during her involvement, which would be more than three pounds. In addition to what his cut of that pound was, he would return to her during the week and obtain more methamphetamine. Mr. Taylor said, yes, there were these three control buys for significant amounts. I believe that I obtained larger quantities from him on a total of seven to nine different occasions. And then I also obtained eight ball quantities from him on a regular basis. And then you have, I believe it was Ada Till who testified that she sometimes served as the delivery woman for Miss Simon, and that she would deliver ounce quantities of methamphetamine from Simon to this defendant on behalf of Miss Simon. And so this is exchanges of drugs repeatedly over time of significant quantities. I do not think that a quarter of an ounce is anywhere near user quantities, Your Honor. That is a redistribution quantity. I think the trial testimony was clear that a user is a quarter to a gram. And so when we start getting in the territory of seven grams, that's potentially up to 28 separate uses of methamphetamine from that seven grams if it was quartered out into quarter grams. That is not personal use quantity. That is redistribution. But if there is some confusion of that, that two ounces that he distributed on July 24th is nowhere near personal use amount. So we have a dealer dealing in redistribution quantities on repeated occasions. This circuit's law is clear that a buyer-seller instruction is not appropriate in that circumstance. If there are no other questions from the court, then I would rest on the rest of the government's brief. Thank you, counsel. How much time does Mr. Hudd have remaining? One minute, 42 seconds. Very well. Thank you. Thank you, counsel. Case is submitted, and you may stand aside.